IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GEORGINE JAVORNICK,               )
            Plaintiff,            )
                                  )
            v.                    ) Civil Action No. 07-0195
                                  )
UNITED PARCEL SERVICE, INC.,      )
            Defendant.            )


MEMORANDUM and ORDER

Gary L. Lancaster,                          September 29, 2008
U.S. District Judge.

            This is an action in employment discrimination.

Plaintiff, Georgine Javornick, alleges that defendant, United

Parcel Service, Inc., discriminated against her based on her

gender in violation of Title VII of the Civil Rights Act of 1964,

42 U.S.C. §2000e, et seq., and the Pennsylvania Human Relations

Act, 43 Pa. Cons. Stat. § 951 et seq.[1]  UPS alleges that it

terminated Javornick due to a pattern of poor performance.

Javornick argues that this pattern of poor performance was

manufactured by UPS in order to provide false justification for

terminating her.

            UPS has filed a motion for summary judgment [doc. no.

24].  UPS contends that Javornick has failed to establish a prima

_____

        [1]     The same analysis applies to both the Title VII
        claim and the PHRA claim.  Thus, disposition of
        the PHRA claim follows from disposition of
        the Title VII claim, and it need not be addressed
        separately.  Weston v. Pennsylvania, 251 F.3d 420,
        425 n.3 (3d Cir. 2001).

facia case of gender discrimination.  In the alternative, even assuming that Javornick had established her prima facia case, UPS argues that summary judgment is still proper because Javornick has not come forth with sufficient evidence to prove that UPS's legitimate, non-discriminatory reason for terminating her is pretext for gender discrimination.

In response, Javornick argues that she has established the elements of her prima facia case and has sufficient evidence of pretext to overcome summary judgment.  According to Javornick, she never committed the majority of the alleged performance infractions for which she was disciplined.  Furthermore, Javornick contends that even if she had committed the infractions, none were serious enough to justify her termination, nor did they result in termination of male employees who committed them.

For the reasons that follow, we will grant UPS's motion for summary judgment.


I.   PENDING MOTIONS AFFECTING SUMMARY JUDGMENT

Before addressing UPS's motion for summary judgment on its merits, the court must dispose of three motions that UPS filed regarding Javornick's opposition papers.  First, UPS filed a motion to strike Javornick's opposition brief, appendix, and

statement of material facts on the ground that they were untimely [doc. no. 33]. Second, UPS filed a motion to strike Javornick's response to its statement of material facts on the ground that it failed to adhere to the requirements of the Local Rules [doc. no. 34]. And third, UPS filed a motion to strike the Rager and Hatfield affidavits on the ground that these witness's identities had not been previously disclosed, and that their testimony is otherwise inadmissible [doc. no. 35]. We deny the first two motions, but grant the third.

As to the first motion, UPS is correct that Javornick filed her opposition papers a day late. They were due on June 17, 2008 and were filed on June 18, 2008. We expect parties to adhere to the court's deadlines, especially when they have been extended as an accommodation to that party. However, we are reluctant to punish a party with the severe sanction of what would amount to entering judgment against it because papers were filed one day late. Although we can understand UPS's frustration at having adhered to its deadlines, while Javornick did not, we find that striking Javornick's opposition papers is inappropriate under the circumstances. The first motion to strike is denied.

As to the second motion, again, UPS is correct that Javornick's Response to UPS's Statement of Undisputed Material Facts fails to adhere to Local Rule 56.1 because Javornick does

not cite to the record when she denies any of UPS's facts.
Javornick's response also fails to adhere to this court's Final
Scheduling Order [doc. no. 21] for the same reason.  The
requirement that a party cite to record evidence in support of
her denial of a material fact is not merely procedural.  Rather,
it serves the important purpose of assisting the court in
isolating those material facts that are truly disputed on the
record at the summary judgment stage.  We take a party's
obligation in this regard seriously.  However, in this case, upon
review of Javornick's response, including her extensive
"counterstatement of additional facts," which includes citations
to the record, the court can nevertheless determine whether there
are any material facts in dispute for purposes of deciding the
pending motion for summary judgment.  As such, we will not strike
Javornick's filing.  The second motion to strike is denied.

The third motion to strike seeks to exclude the two
affidavits that Javornick primarily relies on in opposing UPS's
motion for summary judgment.  UPS argues that the affidavits
should be striken pursuant to Rule 37(c)(1) because neither
witness was identified by Javornick in her Rule 26(a)(1)
disclosure.  Alternatively, UPS argues that the affidavits fail
to meet the requirements of Rule 56(e) because they are not based
on personal knowledge, and contain inadmissible opinion testimony

and hearsay testimony.  We agree with UPS that the affidavits should be striken.

The affidavits in question were executed by Angela Hatfield and Keith Rager.  Both individuals were previously employed by UPS as Business Managers, the same position held by Javornick prior to her termination.  Neither individual still works for UPS, and both have civil suits pending against UPS.  Both affidavits follow a common pattern of reciting the witness's "understand[ing]" of Javornick's situation, and then summarily concluding that UPS violated its own policies by disciplining Javornick, and/or by failing to discipline other employees.  At times, the text of one affidavit is repeated verbatim in the other.

First, we agree that the affidavits should be striken under Rule 37(c)(1) as neither witness was previously disclosed to UPS.  It would be unfair, and not harmless, to allow Javornick to rely on the unchallenged testimony of these two witnesses at the summary judgment stage.  Fed. R. Civ. P. 37(c)(1).  We reject Javornick's argument that she had no duty to identify these witnesses because UPS should have assumed they would assist Javornick in supporting her case because they both have employment discrimination cases pending against UPS.  We will not

hold UPS to a duty to assume that all former employees suing it are in collusion as to their claims.

Nor are we convinced by Javornick's argument that Rager and Hatfield's affidavits amount to no more than rebuttal testimony to the affidavit of David Zimmerman, dispensing with the requirement that the witnesses have been previously identified.  Zimmerman's affidavit is nothing more than a reiteration of the facts and UPS's official position on the issues raised in this case.  To suggest that UPS's summary judgment motion is the first time that Javornick knew what those issues were, or what UPS's position on them was, is disingenuous, at best.  Thus, Javornick had a duty to disclose Hatfield and Rager to UPS, but failed to do so.  As such, we will not consider their affidavits at the summary judgment stage.

However, even if we did not strike the affidavits pursuant to  Rule 37(c)(1), we would strike the affidavits on alternative grounds.  As UPS correctly notes, the majority of the testimony found in the affidavits consists of conclusory opinions, rather than facts, and is not based on personal knowledge.  Such testimony is improper.  Fed. R. Civ. P. 56(e); Maldonado v. Ramirez, 757 F.2d 48, 50-51 (3d Cir. 1985).  A party cannot oppose summary judgment by offering statements of mere belief or opinion.  Id.  Rager and Hatfield's conclusions that

Javornick should not have been disciplined, or that some other
employee should have been disciplined are nothing more than such
impermissible opinion testimony.  While their tenure as former
employees of UPS may endow them with specialized knowledge or
experience that could assist a trier of fact, it does not permit
them, as purported fact witnesses, to offer conclusory opinion
testimony on the ultimate issues raised in this case.  We would
strike the affidavits on this basis.

        In addition, we would strike the affidavits because
they are not based on personal knowledge.  The witnesses
explicitly acknowledge that they have no personal knowledge
regarding Javornick's termination.  They both repeatedly state in
the affidavits that their testimony is based on their
"understanding" of the facts regarding Javornick's case and their
"understanding of [UPS] policy."  <u>See</u> <u>e.g.</u>, Rager Affidavit at ¶
6 ("I understand that Ms. Javornick was faced with making a
decision...", "I am told...", "[m]y understanding of the
policy..."), and Hatfield Affidavit at ¶ 7 ("I understand
that...", "I further understand...", "I further understand...").
These witnesses never contend that they were contemporaneously
aware of, or involved in, the circumstances leading up to
Javornick's termination.  Thus, there is no foundation for their
testimony regarding these matters.  We would strike the

affidavits on this basis as well.  Thus, the third motion to strike is granted.

Having disposed of these three motions, we now address UPS's motion for summary judgment on its merits.


II.  <u>FACTUAL BACKGROUND</u>

All material facts discussed herein are undisputed unless otherwise indicated.  Other facts may be discussed in the memorandum in context.

Javornick began working for UPS in 1990.  In 1999 she was promoted to the position of Business Manager.  A Business Manager is responsible for managing the daily package delivery process and operations of an assigned Business Center, ensuring quality and service to UPS customers, coordinating and scheduling the Center's workload, training the workforce, and enforcing UPS policies.  A Business Manager supervises the other employees assigned to that Center.  A Business Manager reports to the Division Manager.

In February of 2004, Javornick became Business Manager of the Steel Valley Business Center.  Javornick supervised more than 75 people in this position.  Kelly Washington was the Division Manager of that Center until he was transferred to a different division just weeks before Javornick was terminated.

After that transfer, Wes Southall became Javornick's Division Manager.

At the end of 2004, Javornick's Quality Performance Review (QPR) score dropped from being consistently in the 80's and 90's to being 67. This score reflected the first year that Javornick was Steel Valley's Business Manager, and the first year that Washington supervised her. In August of 2005, Washington, citing performance problems, conducted an interim QPR of Javornick, called a Quality Improvement Process Effectiveness Assessment (QIP). Although Javornick scored 100 in two categories on the QIP, she only scored 41.7 in the third category and obtained an overall QIP Assessment Rating of 70.8. Washington informed Javornick that her score was not acceptable.

In October, November, and December of 2005, Javornick was counseled or disciplined for several UPS policy infractions, as evidenced by various memoranda and business records. Examples of these infractions include failing to communicate changes to the daily dispatch plan to her subordinates, failing to enter helper statistics into the UPS computer system, improperly instructing her staff to leave packages in apartment buildings, committing excessive delivery errors, failing to distribute locks to drivers for use on rental vehicles, improperly designating

packages under the "emergency conditions" code due to snow, and allowing drivers to work in excess of 14 hours.

At the end of 2005, with Washington still as her supervisor, Javornick's year end QPR score was 56. On December 29, 2005, Javornick met with Washington, David Zimmerman, District Workforce Planning Manager, and Art Duggan, Operations Manager, to discuss her performance issues. Many of the same specific incidents identified above were discussed at the meeting. As a result of that meeting, Javornick was placed on a 30/60/90 performance review plan. Under the plan, Javornick would be evaluated at 30, 60, and 90 day intervals and would be required to demonstrate improvement in identified areas in order to continue her employment.

Less than three weeks after being placed on the 30/60/90 plan, Javornick, on two consecutive days, improperly changed the status of packages that had been loaded on the wrong trucks from "misloaded" and "missed" to "left in building" in UPS's computer system. On the second day, January 18, 2006, Javornick discussed the situation, after business hours, with her new supervisor, Wes Southall, via telephone. The next day Javornick met with Southall, Bernie Gonda, Employee Relations Manager, and Staci Wilson, Security Manager, regarding this incident. Javornick explained that she had no intent to falsify

records, and simply misunderstood UPS policy on the issue.
Nevertheless, she submitted a written statement admitting that
she had failed to adhere to the terms of her 30/60/90 plan.
Following the incident, and after considering Javornick's history
of poor performance, Art Duggan, Wes Southall, and Brian Staub,
District Human Resources Manager, decided to terminate
Javornick's employment.  Javornick was terminated on February 4,
2006.

III.  <u>STANDARD OF REVIEW</u>

Fed.R.Civ.P. 56(c) provides that summary judgment may
be granted if, drawing all inferences in favor of the non-moving
party, "the pleadings, depositions, answers to interrogatories
and admissions on file, together with the affidavits, if any,
show that there is no genuine issue as to any material fact and
that the moving party is entitled to a judgment as a matter of
law."  To defeat summary judgment, the non-moving party cannot
rest on the pleadings, but rather must go beyond the pleadings
and present "specific facts showing that there is a genuine issue
for trial." Fed. R. Civ. P. 56(e).

The mere existence of some factual dispute between the
parties will not defeat an otherwise properly supported motion
for summary judgment.  A dispute over those facts that might

affect the outcome of the suit under the governing substantive law, _i.e._, the material facts, however, will preclude the entry of summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). Similarly, summary judgment is improper so long as the dispute over the material facts is genuine. <u>Id</u>. In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the non-moving party. <u>Id</u>. at 248-49. Under these standards, the non-moving party must do more than show there is "some metaphysical doubt" as to the material facts. <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).

Although inferences must be drawn in favor of the non-moving party, "an inference based upon speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment." <u>Robertson v. Allied Signal, Inc.</u>, 914 F.2d 360, 382 n.12 (3d Cir. 1990). Similarly, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. <u>Williams v. Borough of W. Chester</u>, 891 F.2d 458, 460 (3d Cir. 1989) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986)); <u>see</u> <u>also</u> <u>Lujan v. Nat'l Wildlife Fed.</u>,

497 U.S. 871, 888 (1990) ("The object of [Rule 56(e)] is not to replace conclusory allegations of the complaint ... with conclusory allegations of an affidavit").

In summary, the inquiry under a Rule 56 motion is whether the evidence of record presents a genuine dispute over material facts so as to require submission of the matter to a jury for resolution of that factual dispute or whether the evidence is so one-sided that the movant must prevail as a matter of law because no reasonable jury could return a verdict in her favor.

IV.  DISCUSSION

UPS contends that it is entitled to entry of summary judgment because Javornick has failed to establish a prima facie case of gender discrimination.  To establish a prima facie case of gender discrimination, Javornick must show that: (1) she was a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) similarly situated males were treated more favorably, or the circumstances of her termination otherwise give rise to an inference of discrimination.  Jones v. Sch. Dist. of Philadelphia, 198 F.3d 403, 410-11 (3d Cir. 1999)(citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)); see

also, Kuzdrowski v. Nicholson, No. 06-4894, 2008 WL 3272138, at *2 (3d Cir. Aug. 11, 2008); Wooler v. Citizens Bank, 274 Fed.Appx. 177, 180 (3d Cir. 2008). The bar is low for establishing a prima facie case. Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ., 470 F.3d 535, 539 (3d Cir. 2006).

UPS argues that Javornick cannot satisfy these elements because she was not satisfactorily performing her duties and because she was not discharged under circumstances giving rise to an inference of discrimination. UPS contends that the record reflects, instead, that Javornick was terminated because she had substantial performance deficiencies and engaged in repeated violations of UPS policy. Javornick alleges that she has satisfied her modest burden to establish a prima facie case and should be permitted to proceed beyond this threshold. We agree with Javornick on this point and find that Javornick has adequately satisfied the elements of the prima facie case for purposes of summary judgment.

Contrary to UPS's contentions, although there were questions regarding Javornick's performance as Business Manager, there really is no dispute that she possessed the objective qualifications for the position. In addition, UPS has acknowledged that it replaced Javornick with a male employee.

14

Although this isolated fact does not, itself, prove discriminatory intent in her termination, we will permit it to advance Javornick's case beyond the prima facie case stage for purposes of our summary judgment analysis.

Thus, we next ask whether UPS has articulated a legitimate, non-discriminatory reason for Javornick's termination. McDonnell Douglas, 411 U.S. at 802. It has. UPS contends that it fired Javornick due to her history of poor performance and her violation of the 30/60/90 plan. As such, in order to withstand summary judgment, Javornick must demonstrate that this proffered reason for her termination was pretext for gender discrimination. Id. at 804-05. Javornick can establish pretext by pointing to specific evidence sufficient to permit a fact finder either: (1) to disbelieve the employer's articulated legitimate reason for taking an adverse employment action; or (2) to believe that gender discrimination "was more likely than not a motivating or determinative cause of the employer's action." Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994); see also Salley v. Circuit City Stores, Inc., 160 F.3d 977, 981 (3d Cir. 1998) (citing Olsen v. General Elec. Astrospace, 101 F.3d 947, 951 (3d Cir. 1996)).

An employee can discredit an employer's articulated reason for an employment decision by pointing to "weaknesses,

implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons such that a reasonable fact finder could rationally find them 'unworthy of credence.'" Simpson v. Kay Jewelers, 142 F.3d 639, 644 (3d Cir. 1998). However, an employee cannot simply show that the employer's decision was wrong or mistaken or harsh, because the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent. Fuentes, 32 F.3d at 765.

In this case, Javornick contends that she has established that UPS's reason for firing her is pretext for gender discrimination by casting substantial doubt on each of the ten performance incidents leading to her termination. In fact, Javornick's opposition brief on the issue of pretext consists of nothing more than Javornick's attack on each of the ten performance incidents leading up to her termination, unsupported by citation to the record. A sampling of Javornick's arguments as to several of these incidents is sufficient to demonstrate why we conclude that Javornick has failed to satisfy her burden to establish pretext.

However, before addressing any of the ten specific reasons, as an initial matter, we address three themes that predominate her opposition: (1) that she did not actually commit

the infractions and that the company memoranda to the contrary were either coerced or forged; (2) that there are too many facts in dispute to permit this case to be decided as a matter of law; and (3) that the infractions were not serious enough to justify termination.

As to the first issue, the record is replete with documentation of the performance-related incidents. There are numerous, and varied, third parties who took part in meetings and drafted memos regarding these incidents. In addition, company business records reflect Javornick's performance deficiencies. Javornick's Business Center had 295 delivery errors to Williams-Sonoma on November 29, 2005, while the next highest number of errors to that customer was 2. And her Center had 60 delivery errors to Harry & David, when the next highest number of errors was 17. Finally, Javornick admitted to many of the infractions in her deposition, but now attempts to recant those admissions at the summary judgment stage. She cannot avoid summary judgment with such tactics. Hackman v. Valley Fair, 932 F.2d 239, 241 (3d Cir. 1991) (citing Martin v. Merrell Dow Pharaceuticals, Inc., 851 F.2d 703, 706 (3d Cir. 1988)). There is no real dispute that Javornick committed the errors and infractions of which she is accused, and no reasonable juror could find to the contrary based on this record.

Nor would a reasonable juror find any evidentiary support for Javornick's contention that she was forced to draft or sign memos admitting the infractions or that memos were falsified by UPS officials. Javornick has presented no evidence in support of these claims other than her own unsupported accusations.[2] These contentions are all the more unbelievable given that Javornick did not raise them during her deposition when presented with the allegedly coerced and forged documents. The fact that her memos were typically written in the presence of and with the input of her supervisor in order to ensure that they were clear does not equate to coercion or forgery. Javornick has presented no evidence from which a reasonable juror could find that the performance incidents never occurred and all documentation of them was coerced or falsified.

Secondly, Javornick's attempts to avoid summary judgment by pointing to the number of facts allegedly in dispute are similarly unavailing. The disputed facts that Javornick identifies are either not actually in dispute or the dispute is immaterial. By way of example, there is no dispute that Javornick's performance problems began after Washington became her supervisor. However, that fact alone does not prove gender

---

[2]     The Rager and Hatfield affidavits cannot support this contention as we have striken them from the record.

18

discrimination.  Javornick has presented no evidence that
Washington disciplined male Business Managers any differently
than her.  Similarly, any discrepancy in the record as to the
time span of Javornick's performance problems is illusory and
immaterial.  The documentation clearly details the dates of each
of the incidents contributing to Javornick's termination.
Moreover, it is immaterial whether the performance incidents
occurred over a period of 18 months or 2 months.  An employer is
not required to endure a specific period of poor performance,
even from a long-time, satisfactory employee, before it can
terminate her.  Even if the infractions occurred only over a
period of two months, as alleged by Javornick, no reasonable
juror could find that that fact proves a gender motivation for
her termination.

        We turn now to the third issue that predominates
Javornick's opposition, that the performance issues were not
serious enough to warrant termination.  Javornick presents no
evidence in support of her personal opinion that she should not
have been fired for these infractions.  Javornick's personal
opinion as to the seriousness of her infractions cannot avoid
entry of summary judgment.  Jones v. United Parcel Serv., 214
F.3d 402, 407 (3d Cir. 2000)(citing Celotex Corp. v. Catrett, 477
U.S. 317, 324 (1986)); Ridgewood Bd. of Educ. v. N.E. ex rel.

M.E., 172 F.3d 238, 252 (3d Cir. 1999)(citing Groman v. Township of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995)). Furthermore, the comparators that she presents, as will be discussed below in detail, are faulty in several respects, and do not support her claim that the infractions did not warrant termination. Regardless, even if Javornick had evidence that she was treated harshly, she cannot survive summary judgment by proving that UPS's decision was wrong, mistaken, or harsh. Fuentes, 32 F.3d at 765. Nor can she establish that her gender was the reason for her termination by "[m]erely reciting that discrimination was the reason for the decision..." Billet v. CIGNA Corp., 940 F.2d 812, 816 (3d Cir. 1991).

Like these overall deficiencies in Javornick's opposition to the motion for summary judgment, Javornick's specific responsive arguments to UPS's list of ten performance problems fail to identify any evidence to support a jury determination of pretext, thus, making entry of summary judgment proper. For instance, as to the first performance incident, the release of packages to apartments without signature, Javornick states that the practice of doing so was approved by "her immediate supervisor, the District Manager", did not result in discipline of "other former managers", and had ceased at the time she was disciplined for it. Piecing together Javornick's

opposition papers, Javornick's first two points are allegedly supported by the affidavits of Rager and Hatfield. We have striken those affidavits. However, even had we not done so, the witnesses actually testify that John Loughery, another manager, approved the practice. Loughery was not Javornick's supervisor; Washington was. No reasonable juror could find that Javornick has established pretext because a different supervisor allowed the practice in the past.

Furthermore, the fact that the incident occurred two months before Javornick was formally disciplined for it does not establish pretext. Unfortunately, past performance problems are not expunged from management's memory, or an employee's record, after they have occurred, or even been resolved. To the extent management is addressing continuing performance problems, it is not implausible for past performance issues to be raised in tandem. No reasonable juror could find that Javornick has established pretext because her superiors included this past performance issue in their disciplinary process.

As a further example, Javornick attacks UPS's third reason, errors in delivering to Williams-Sonoma, on the ground that a male subordinate, Chris Hatter, caused the problem, but was not disciplined. This alleged disparate treatment of a male employee cannot bolster Javornick's gender discrimination claim

against UPS.  Javornick was Hatter's supervisor.  She required

Hatter to draft a memorandum regarding this matter, similar in

form and content to the memos she drafted to Washington,

acknowledging his responsibilities for the problem.  To the

extent that the incident warranted further discipline, Javornick

had the authority to deliver it, but chose not to.  No reasonable

juror could find that UPS was motivated by a gender bias based on

Javornick's own failure to discipline a male subordinate.

For the same reasons, Javornick cannot create evidence

of disparate treatment from the fact that Corey Thomas was not

disciplined for failing to enter helper statistics into the

computer.  Javornick supervised Thomas, and she had the authority

to discipline him for violating the policy.  That she decided not

to discipline a male employee does nothing to advance her theory

that UPS fired her because she is a woman.

Moreover, neither Hatter nor Thomas were Business

Managers.[3]  Business Managers were upper level management

---

[3]     Javornick's final male comparator, Brandt, is also
not a Business Manager and is otherwise not
similarly situated.  He did not commit the same
violation of the "emergency conditions" policy as
did Javornick by calling all of her drivers off
the road without having driver-specific reports of
impassable roads.  Nor did Brandt have a history
of performance problems.  <u>Jackson v. Bob-Evans
Columbus</u>, No. 04-0559, 2006 WL 3814099, at *6
(W.D. Pa. Dec. 22, 2006).

employees, charged with supervising the operations of an entire Business Center, and all of its employees.  That such a manager could be disciplined by her supervisor for an infraction committed by her subordinates, does not prove gender discrimination, or support a claim of pretext.  Rather, it is evidence of a corporate hierarchy where managers are held accountable for the actions of those they supervise.

As a final example, Javornick attacks UPS's eighth reason for her termination, allowing subordinates to violate the 14 hour rule, on the ground that the drivers who violated the rule, and Washington, were not also disciplined.  Javornick misses the mark.  She, as Business Manager, was responsible for supervising the drivers and ensuring their compliance with such rules.  To the extent her subordinates deserved discipline for not following her directive to comply with the 14 hour rule, it was her duty to impose it.  However her power to discipline the employees under her does not mean that she, as manager and supervisor, could not be disciplined by her supervisor for deficiencies in the operations of her Center.

We need not discuss each argument Javornick makes in response to every one of the ten performance problems UPS cites in support of its decision to terminate her.  Based on this record, there is no evidence from which a reasonable juror could

find that UPS's real reason for firing Javornick was her gender. Javornick has produced no evidence from which a jury could either disbelieve UPS's reason for firing her, or believe that her gender was more likely than not the real cause of her termination.  <u>Salley</u>, 160 F.3d at 981.  Accordingly, we must enter summary judgment in UPS's favor on both the Title VII and PHRA claims.

V.  <u>CONCLUSION</u>

      For the foregoing reasons, judgment will be entered in UPS's favor.  An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GEORGINE JAVORNICK,              )
        Plaintiff,        )
                        )
        v.               ) Civil Action No. 07-0195
                        )
UNITED PARCEL SERVICE, INC.,     )
        Defendant.        )

ORDER

_____AND NOW this 29th day of September, 2008, IT IS HEREBY

ORDERED that:

Defendant's motion to strike plaintiff's brief in

opposition, counter-statement of facts and appendix [doc. no. 33]

is DENIED;

Defendant's motion to strike plaintiff's response to

defendant's statement of  undisputed facts [doc. no. 34] is

DENIED;

Defendant's motion to strike the affidavits of Keith

Rager and Angela Hatfield [doc. no. 35] is GRANTED; and

Defendant's motion for summary judgment [doc. no. 24]

is GRANTED.

Judgment shall be entered in defendant's favor.

The Clerk of Court is directed to mark this matter as closed.

BY THE COURT:

s/Gary L. Lancaster____, J.
The Honorable Gary L. Lancaster,
United States District Judge


cc:  All Counsel of Record